IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

|  |  |  |
|---|---|---|
| LATOYA BRYSON o/b/o L.D.H. (minor child), | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 20-cv-1028-TMP |
| ANDREW SAUL, COMMISSIONER of SOCIAL SECURITY | ) ) ) | |
| Defendant. | ) ) ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Before the court is an appeal filed by plaintiff Latoya Bryson, on behalf of her minor daughter L.D.H., from a final decision denying her application for Supplemental Security Income Child's Disability Benefits under Title XVI of the Social Security Act ("the Act"). The parties have consented to the jurisdiction of the United States magistrate judge under 28 U.S.C. § 636(c). (ECF No. 10.) For the reasons below, the Commissioner's decision is AFFIRMED.

## I.   FINDINGS OF FACT

L.D.H. is a high school student who allegedly suffers from mood disorder, anxiety disorder, a learning disability, attention deficit hyperactivity disorder ("ADHD"), depression, and mental and behavioral problems. (R. at 228.) Prior to the instant action,

Latoya Bryson, L.D.H.'s mother, had filed applications for Supplemental Security Income ("SSI") on behalf of L.D.H. in 2006, 2007, 2009, and 2011. (R. at 12.) Regarding the 2011 application, the Social Security Administration ("SSA") denied her application in January of 2012, and Bryson did not request a hearing on the matter. (R. at 12-13.)

On April 19, 2016, Bryson submitted a fifth application on behalf of L.D.H. for children's SSI under Title XVI of the Act. (R. at 12.) The application stated that L.D.H.'s disability began on August 7, 2002. (R. at 12.) Bryson's application was initially denied by the SSA in a decision on July 28, 2016, and, on reconsideration, on November 21, 2016. (R. at 12.) Bryson then requested a hearing with an administrative law judge ("ALJ"), which took place on August 28, 2018. (R. at 12.) During the hearing, Bryson amended L.D.H.'s disability onset date to April 19, 2016. (R. at 12.) After considering the record and the testimony given at the hearing, the ALJ concluded that L.D.H. was not disabled under § 1614(a)(3)(C) of the Act. (R. at 27.)

To reach this conclusion, the ALJ used the three-step evaluation process for determining if a minor claimant is disabled. (R. at 13.) At the first step, the ALJ determined that L.D.H. had not engaged in any substantial gainful activity ("SGA") since April 19, 2016. (R. at 16.) Turning to step two, the ALJ found that L.D.H. suffered from several severe impairments, namely ADHD,

anxiety and mood disorder, borderline intellectual functioning vs.
learning disorder, and migraine headaches. (R. at 16.) However, at
the third step, the ALJ determined that none of these impairments,
or any combination thereof, met, medically equaled, or
functionally equaled any of the listed impairments in 20 C.F.R.
Part 404, Subpart P, Appendix 1. (R. at 16.); see 20 C.F.R. §§
416.924, 416.925, 416.926.

In making her determination at the third step, the ALJ first
considered Listing 112.04 – Depressive, Bipolar and Related
Disorders. (R. at 16.) In ruling that L.D.H. did not meet this
listing, the ALJ found that L.D.H. exhibited some of the requisite
symptoms, she did not have one extreme or two marked limitations
in functioning and that the record did not support a finding of
both "serious and persistent" and "marginal adjustment." (R. at
16.) Second, the ALJ determined that L.D.H. did not satisfy the
requirements for Listing 112.05 – Intellectual Disorder. (R. at
16.) In reaching this decision, the ALJ found that L.D.H. did not
satisfy Paragraph A of Listing 112.05 because she had the ability
to take standardized tests and she was not dependent on others for
her personal needs. (R. at 16.) Regarding Paragraph B, the ALJ
found that she did not have a valid IQ test score within the
requisite range coupled with "two of the appropriate age-group
criteria." (R. at 16-17.) Third, the ALJ determined that L.D.H.'s
impairments did not meet the requirements for Listing 112.11 –

Neurocognitive Disorders – because "the claimant's functional limitations are not of listing level severity." (R. at 17.)

Finally, the ALJ considered whether any of L.D.H.'s impairments, or any combination thereof, functionally equaled the severity of the listed impairments, and found that they did not. (R. at 17.) In reaching this decision, the ALJ gave "some weight" to opinions rendered by DDS reviewers

> who assessed the claimant as having severe impairments with ADHD and organic mental disorder and a non-severe impairment of anxiety disorder with assessments of marked limitation in acquiring and using information[,] less than marked limitation in attending and completing tasks, less than marked limitation in interacting and relating with others, no limitation in moving and manipulating objects, less than marked limitation in caring for [herself], and no limitation in health and physical well-being.

(R. at 21.) The ALJ reasoned that this assessment was generally consistent with the record but was based on regulations that did not allow the reviewer to consider the severe impairment of migraine headaches. (R. at 21.) The ALJ also elected to give limited weight to the opinion of "Dr. Emily Davis, Senior Psychological Examiner, Licensed," because she had a doctorate in education rather than an M.D. or a Ph.D. and because her assessment had internal and external inconsistencies. (R. at 22.)

After weighing the medical sources and analyzing L.D.H.'s medical history, the ALJ made the following findings for the six functional equivalence domains. Regarding "Acquiring and Using

- 4 -

Information," the ALJ found L.D.H. had a marked limitation. (R. at 22-23.) Regarding "Attending and Completing Tasks," the ALJ found L.D.H. had a less than marked limitation. (R. at 23-24.) Regarding "Interacting and Relating with Others," the ALJ found L.D.H. had a less than marked limitation. (R. at 24-25.) Regarding "Moving About and Manipulating Objects," the ALJ found L.D.H. had no limitation. (R. at 25-26.) Regarding "Caring for Yourself," the ALJ found L.D.H. had a less than marked limitation. (R. at 26.) Regarding "Health and Physical Well-Being," the ALJ found L.D.H. had a less than marked limitation. (R. at 26-27.) As a result, on December 5, 2018, the ALJ issued a decision detailing the findings summarized above and holding that L.D.H. had not been disabled since April 19, 2016. (R. at 27.) On December 6, 2019, the SSA Appeals Counsel denied Bryson's request for review. (R. at 2-7.) Bryson now seeks judicial review of that decision, which stands as the final decision of the Commissioner under § 1631(c)(3) of the Act.

## II.  CONCLUSIONS OF LAW

### A.  Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not

try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

## B.   The Three-Step Analysis

Section 1382c(a)(3)(C)(i) of the Social Security Act states that:

> An individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Lowery v. Comm'r, Soc. Sec. Admin., 55 F. App'x 333, 341 (6th Cir. 2003). SSA regulations require that an ALJ follow a three-step sequential analysis in determining whether a person under the age of 18 is disabled. See 20 C.F.R. § 416.924(a).

At the first step, the ALJ must determine whether the claimant is engaging in any SGA. If the claimant is engaged in any SGA,

then he or she is not disabled, "regardless of [the claimant's] medical condition or age, education, or work experience." 20 C.F.R. §§ 416.924(a)-(b). If not, the ALJ advances to the next step. Step two of the analysis requires a determination of whether the claimant's medically determinable impairment or combination of impairments is severe. 20 C.F.R. § 416.924(a). A slight abnormality "that causes no more than minimal functional limitations" is not severe and cannot be the basis for a disability. 20 C.F.R. § 416.924(c). If the claimant has a severe impairment, the ALJ will advance to step three. At step three of the analysis, the ALJ considers whether the claimant's severe impairment meets, medically equals, or functionally equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 416.924(a), (d). In making this determination, the ALJ must consider all of the claimant's medically determinable impairments, even those that are not classified as severe. A claimant is disabled if his or her impairments meet, medically equal, or functionally equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 and if it has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 416.924(a). If not, the claimant is not disabled. Id.

A child's impairment is "functionally equal" to a listed impairment "if the child has an extreme limitation in one area of functioning, or a marked limitation in two areas of functioning."

- 8 -

Miller ex rel. Devine v. Comm'r of Soc. Sec., 37 F. App'x 146, 148 (6th Cir. 2002); 20 C.F.R. § 416.926a(a). A child's functional equivalency is assessed in terms of six domains: "(1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being." 20 C.F.R. § 416.926a(b)(1).

The terms "marked" and "extreme" limitation are defined by regulation. A marked limitation is one that "interferes seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). Such limitations are "the equivalent of the functioning [the SSA] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." Id. An extreme limitation is one that "interferes very seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). Extreme limitation "does not necessarily mean a total lack or loss of ability to function." Id. Rather, extreme limitation is "the equivalent of the functioning [the SSA] would expect to find on standardized testing with scores that are at least three standard deviations below the mean." Id.

**C.   Prior Social Security Decisions**

Bryson first argues that the ALJ's decision must be reversed because she misapplied the Sixth Circuit's holding in Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997), when she found that no new evidence supported a change in the SSA's prior decision that L.D.H. was not disabled as of January 2012.[1] (R. at 13.) Notably, the ALJ only adopted the prior SSA decision that L.D.H. was not disabled in general and did not adopt any specific functional limitations from the prior decision. (R. at 13.) Under Drummond, "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." Id. at 842. Recently, the Sixth Circuit elaborated on its holding in Drummond, stating that nothing "prevent[s] the [SSA] from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability." Earley v. Comm'r of Soc. Sec., 893 F.3d 929, 931 (6th Cir. 2018). Bryson's earlier application for disability benefits on behalf of L.D.H. was denied in January 2012 without a hearing or appeal. As such, the decision was not rendered by an ALJ and thus Bryson is correct in arguing that Drummond does not apply in this case. Regardless, Bryson alleges that L.D.H.'s disability began on April 19, 2016, more than four

_____

[1]Bryson also alleges that the ALJ misapplied Dennard v. Sec'y of Health and Human Servs., 907 F.2d 598 (6th Cir. 1990). Because the ALJ did not mention or analyze Dennard in her decision, this objection is baseless.

- 10 -

years after the SSA initially determined that L.D.H. was not disabled. That the ALJ considered generally that L.D.H. was not disabled as of January 2012 had no bearing on whether she was disabled as of April 19, 2016. The ALJ's misstatement of law was harmless error and is not reason for remand.

## D.   Medical Sources

SSA regulations require that "the ALJ evaluate[] all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." Eslinger v. Comm'r of Soc. Sec., 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)); see also Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 514 (6th Cir. 2010).

> An opinion from a treating physician is 'accorded the most deference by the SSA' because of the 'ongoing treatment relationship' between the patient and the opining physician. A nontreating source, who physically examines the patient 'but does not have, or did not have[,] an ongoing treatment relationship with' the patient, falls next along the continuum. A nonexamining source, who provides an opinion based solely on review of the patient's existing medical records, is afforded the least deference.

Norris v. Comm'r of Soc. Sec., 461 F. App'x 433, 439 (6th Cir. 2012) (quoting Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 875 (6th Cir. 2007)) (internal citations omitted). "ALJs must evaluate every medical opinion [they] receive by considering several enumerated factors, including the nature and length of the doctor's relationship with the claimant and whether the opinion is supported

by medical evidence and consistent with the rest of the record." Stacey v. Comm'r of Soc. Sec., 451 F. App'x 517, 519 (6th Cir. 2011). When an ALJ rejects the opinion of a medical expert who is not a treating physician, the decision "must say enough to allow the appellate court to trace the path of [the ALJ's] reasoning" but need not be "an exhaustive factor-by-factor analysis." Id. (internal citation and quotation omitted); Francis v. Comm'r of Soc. Sec., 414 F. App'x 802, 804 (6th Cir. 2011); see also Ealy, 594 F.3d at 514 (holding that the Act's requirement for an ALJ to give good reasons for rejecting a treating physician's opinions does not apply to an examining physician).

1.  Dr. Emily Davis

Bryson's primary argument on appeal is that the ALJ erred by giving only limited weight to the opinion of Dr. Davis and by not considering her to be an acceptable medical source.[2] The ALJ elected to give Dr. Davis's opinion limited weight for two reasons. First, the ALJ was concerned that Dr. Davis did not have an M.D. or a Ph.D. (R. at 22.) Second, the ALJ reasoned that Dr. Davis's opinion contained contradictions both internally and with other parts of the record. (R. at 22.) Specifically, the ALJ pointed to

---

[2]It is not immediately clear from the ALJ's opinion whether she considered Dr. Davis to be an acceptable medical source or not, as the ALJ did not make an express finding on that issue. Rather, the ALJ appears to have considered that Dr. Davis did not have an M.D. or a Ph.D. when deciding how much weight to give the opinion. (R. at 22.)

Dr. Davis's finding that L.D.H. was unable "to function at a level required to participate in standardized testing of intellectual functioning," while simultaneously finding that L.D.H. had scored a 70 or below on a standardized test of general intelligence. (R. at 22.) According to the ALJ, "[t]hese inconsistent statements [brought] into question the accuracy of the entire assessment." (R. at 22.)

20 C.F.R. 416.1450(d) defines an acceptable medical source as:

> (1) Licensed physician (medical or osteopathic doctor);
> (2) Licensed psychologist, which includes: (i) A licensed or certified psychologist at the independent practice level; or (ii) A licensed or certified school psychologist, or other licensed or certified individual with another title who performs the same function as a school psychologist in a school setting, for impairments of intellectual disability, learning disabilities, and borderline intellectual functioning only.

The Sixth Circuit has explained that, "[o]utside of the school context," only licensed or certified psychologists qualify as acceptable medical sources under the regulations. Golden v. Comm'r of Soc. Sec., 591 F. App'x 505, 506 (6th Cir. 2015). Dr. Davis is a "Senior Psychological Examiner, Licensed" with an Educational Doctorate. (R. at 690.) Because she is not a licensed or certified psychologist, she can only be an acceptable medical source if she practices "in a school setting." 20 C.F.R. 416.1450(d)(2)(ii); see Golden, 591 F. App'x at 506 (holding that "neither Adams nor Jessup, as 'senior psychological examiners,' fit [the] category"

- 13 -

of licensed or certified psychologist); Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 126 (6th Cir. 2003) (holding that a psychological associate was not an acceptable medical source). The Testing Experience section of Dr. Davis's C.V. indicates that she has worked in special education and academic evaluation for nearly thirty years with the Henderson County School System, the Lexington City School System, and the Jackson Christian School. (R. at 690.) Consequently, the court finds that Dr. Davis is an acceptable medical source under the SSA regulations.

That said, Dr. Davis only examined L.D.H. one time and is thus an examining source under the regulations. Norris, 461 F. App'x at 439. As such, the ALJ was not obligated to give Dr. Davis's opinion controlling weight and her decision withstands scrutiny if it is sufficiently detailed that the court can "trace the path of [the ALJ's] reasoning." Stacey, 451 F. App'x at 519. In her decision, the ALJ identified inconsistencies between the objective testing evidence and Dr. Davis's opinion. Moreover, the ALJ noted that:

> Dr. Davis has assessed the claimant as having extreme and marked limitations in functioning with no explanation as to how the claimant is able to function independently at school with such limitations or how the claimant's treating provider has not noted such a degree of limitations. While the claimant has obtained low IQ scores, the Administrative Law Judge has also noted that some treating providers have assessed the claimant as having average intellectual functioning.

(R. at 22.) Based on the ALJ's opinion, it is clear how the ALJ reached her decision to give Dr. Davis only limited weight: namely the inconsistencies within the report itself and with the rest of the record. See Carrington v. Colvin, No. 15-cv-1264-TMP, 2018 WL 678447, at *5 (W.D. Tenn. Feb. 2, 2018) ("Unlike with treating sources, ALJs may state that they are discounting the opinion of a non-treating or non-examining medical source without giving a good reason as to why."). This is a sufficient basis for the ALJ to afford Dr. Davis's opinion only limited weight.

2.    Records from Memphis Neurology

Next, Bryson argues that the ALJ erred by not considering "the treatment records and testing report of the treating neurologist" under the Treating Physician Rule. (ECF No. 14 at 18.) In her section of the brief arguing the treating neurologist should be given controlling weight, Bryson does not identify a particular physician as "the treating neurologist," referring only generally to "the treating neurology clinic." (ECF No. 14 at 18.) Regardless, Bryson appears to be referring to L.D.H.'s treatment records with Dr. Ronald N. Lynn and Dr. Elizabeth M. Cruz at Memphis Neurology.[3] L.D.H.'s medical record contains files from Memphis Neurology dated June 16, 2011, July 27, 2011, June 20,

---

[3]The ALJ appears to allude to a psychometric test conducted by Jim Brown, MA, CSP, Educational Diagnostician on January 2, 2018, that has a Memphis Neurology letterhead. (R. at 20, 749-52.)

2012, November 4, 2016, November 9, 2016, September 21, 2017, October 17, 2017, January 2, 2018, and January 8, 2018. (R. at 590-93, 626-655, 749-52.)

The Commissioner argues that the ALJ did not commit reversible error because the Memphis Neurology reports do not contain actual opinion evidence and, in any event, substantial evidence supports the ALJ's decision, making any error harmless. SSA regulations define a medical opinion as "a statement[] from [an] acceptable medical source[] that reflect[s] judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms, diagnosis and prognosis, what [claimant] can still do despite impairment(s), and [claimant's] physical or mental restrictions." 20 C.F.R. 416.927(a)(1). In McDonald v. Astrue, the Tenth Circuit considered a similar situation where an ALJ did not mention or analyze clinician treatment notes. 492 F. App'x 875, 883-84 (10th Cir. 2012). There, the clinical records at issue contained "the clinicians' observations of [claimant's] symptoms, the nature of [claimant's] impairments, and the clinicians' diagnoses, and the GAF scores addressed in general terms the severity of [claimant's] symptoms and functional difficulties." Id. at 884. However, because the notes did not indicate any sort of prognosis or provide any input as to "what [claimant] could still do despite her impairments or the nature of her mental restrictions," the court held that the treatment notes did not

- 16 -

constitute medical opinions. Id.; see also Montecalvo v. Comm'r of Soc. Sec., 695 F. App'x 124, 128 (6th Cir. 2017) ("[S]tatements that do not address the specific extent of limitations 'appear to be outside the scope of medical opinions'") (quoting Allen v. Comm'r of Soc. Sec., 561 F.3d 646, 651 n.3 (6th Cir. 2009)). The same is true here, as L.D.H.'s medical records from Memphis Neurology contain only psychometric test results, examination notes, and corresponding diagnoses. See Bulick v. Colvin, No. 5:13 CV 1432, 2014 WL 2003049, at *1 (N.D. Ohio May 13, 2014) (finding that a physician's treatment notes were not medical opinions where, in the notes, the plaintiff was diagnosed with depression and anxiety but "there [was] no statement of 'nature and severity' of the symptoms or impairments, the prognosis, or any restriction [that] would cause plaintiff [restrictions] in a work setting"). The Memphis Neurology reports do not include any judgment as to the extent or prognosis of L.D.H.'s alleged disabilities or express an opinion of how the alleged disabilities will impact L.D.H.'s daily life. See Welch v. Colvin, 566 F. App'x 691, 694 (10th Cir. 2014) (holding that a "physician [who] simply diagnosed . . . impairments and in some cases recommended treatment for them" did not provide a medical opinion that the ALJ was required to weigh). Moreover, many of the records contain a disclaimer that reads

> This report is an interpretive aid and should not be used as the sole criterion for clinical diagnosis or intervention. Caution is urged against drawing

> unsupported interpretations. Combining information from this report with clinical observations and other psychometric measures will provide a more comprehensive view of the patient than might be obtained from any one source.

(R. at 591, 651, 751.) As such, the ALJ properly declined to apply the Treating Physician Rule to the records from Memphis Neurology.[4]

### 3. Dr. Anne McSpadden, Ph.D.

Additionally, Bryson argues that the ALJ erred by failing to properly consider a 2016 psychological examination by Dr. Anne McSpadden, Ph.D., as medical opinion evidence. (R. at 423.) In her examination – which was based on a parent survey, results from an IQ test, and teacher observations – Dr. McSpadden recommended that L.D.H. receive "special education services to improve her academic performance" and the IEP team "consider certifying [L.D.H.] as Functionally Delayed." (R. at 423-29.) Like the records from Memphis Neurology, the Commissioner argues that Dr. McSpadden's report does not constitute medical opinion evidence. The court agrees. Rather than "reflect a judgment about the nature and

---

[4]In any event, it appears that the ALJ considered the diagnoses from Dr. Lynn and Dr. Cruz in step two of her analysis, as the ALJ found that L.D.H. suffered from ADHD, anxiety and mood disorder, borderline intellectual functioning disorder vs. learning disorder, and migraine headaches. (R. at 16.) This finding mirrors the various diagnoses contained in the Memphis Neurology records. (R. at 632, 636-37, 641, 644, 647, 650.) "[T]he ALJ need not expressly mention every piece of evidence so long as the overall decision was supported by substantial evidence." Noto v. Comm'r of Soc. Sec., 632 F. App'x 243, 250 (6th Cir. 2015) (citing Loral Defense Sys.–Akron v. N.L.R.B., 200 F.3d 436, 453 (6th Cir. 1999)).

severity of the claimant's impairments," Dr. McSpadden's report was a recommendation that L.D.H. be enrolled in special education courses in high school. Noto, 632 F. App'x at 246 n.1 (citing Dunlap v. Comm'r of Soc. Sec., 509 F. App'x 472, 476 (6th Cir. 2012)). The court finds that this is not a medical opinion under the regulations.[5]

### 4.    DDS Form Reviewers

Bryson also argues that the ALJ erred by giving "great weight" and "rubber stamp approval" to the opinions of two DDS medical and psychological form reviewers. (ECF No. 14 at 21.) "Generally, an ALJ may rely on a state agency consultant's medical opinion in the same manner that she may rely on other physician opinions." Cogswell ex rel. Cogswell v. Comm'r of Soc. Sec., No. 3:16-cv-2030, 2018 WL 3215721, at *2 (N.D. Ohio July 2, 2018); see also Reeves v. Comm'r of Soc. Sec., 618 F. App'x 267, 274 (6th Cir. 2015). "Thus, an ALJ may provide greater weight to a state agency physician's opinion when the physician's finding and rationale are supported by evidence in the record." Reeves, 618 F. App'x at 274;

---

[5]Even so, the ALJ appears to have considered Dr. McSpadden's recommendation that L.D.H. receive special education in making her decision, as the ALJ referenced L.D.H.'s special education classes and problems in school on several occasions in her analysis. (R. at 23-25.); see Bayes v. Comm'r of Soc. Sec., 757 F. App'x 436, 445 (6th Cir. 2018) (quoting Loral Defense Sys.-Akron, 200 F.3d at 453) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.").

see also McGrew v. Comm'r of Soc. Sec., 343 F. App'x 26, 32 (6th Cir. 2009) (agency regulations allow a consulting physician opinion that is based only on "a cursory review of her then existing medical records" to be considered "as opinion evidence, except for the ultimate determination about whether you are disabled.") (quoting 20 C.F.R. § 404.1527(f)(2)(i)); Hoskins v. Comm'r of Soc. Sec., 106 F. App'x 412, 415 (6th Cir. 2004) ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence.").

In her decision, the ALJ stated that she was affording "some weight" to the opinions of Dr. Peggy Elam, Ph.D., and Dr. Stacy Koutrakos, Psy. D., because they were "generally consistent with the established residual functional capacity." (R. at 21.) Contrary to Bryson's assertion, the ALJ did not give "rubber stamp approval" or even "great weight" to these opinions. (ECF No. 14 at 21.) Indeed, the ALJ found that L.D.H. suffered from more severe impairments than either Dr. Elam or Dr. Koutrakos opined and she specifically noted that the opinions were not entirely reliable because they did not account for "the severe impairment of migraine headaches."[6] (R. at 21.) That the DDS examiners and the ALJ both

---

[6]The ALJ found that L.D.H.'s ADHD, anxiety and mood disorder, borderline intellectual functioning vs. learning disorder, and migraine headaches were all severe impairments. (R. at 16.) Meanwhile, Dr. Koutrakos found that L.D.H. only suffered from

- 20 -

concluded that L.D.H. was not disabled does not imply that the ALJ gave controlling weight to these opinions.

Moreover, Bryson does not articulate how the ALJ erred in weighing the DDS examiner opinions beyond arguing that the court should never rely on the opinions of state agency non-examining physicians. To support this argument, Bryson cites to a newspaper article discussing problems with Tennessee's disability determination process. This court has an extremely limited role in the Social Security disability determination process: to evaluate whether the ALJ's decision was supported by substantial evidence and whether the ALJ used the correct legal criteria to make his or her decision. See, e.g., Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018). It is not free to restructure the disability determination process to suit its policy preferences. Similarly, the court generally cannot consider evidence outside of the administrative record, such as newspaper articles. Miller v. Comm'r of Soc. Sec., 811 F.3d 825, 839 (6th Cir. 2016). Bryson's objection is not supported by law.

**E.   Other Source Evidence**

Bryson also argues that the ALJ's decision should be vacated because the ALJ did not consider certain non-medical source

---

severe ADHD, severe organic mental disorders, and severe anxiety disorder, while Dr. Elam found that L.D.H. suffered from severe ADHD, severe organic mental disorders, and non-severe anxiety disorders. (R. at 111, 124.)

opinions in her decision, namely a teacher questionnaire from special education teacher Linda Webb.[7] Regarding "[o]pinions from medical sources who are not acceptable medical sources and from nonmedical sources . . . [t]he adjudicator generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, *when such opinions may have an effect on the outcome of the case*." 20 C.F.R. § 404.1527(f)(2) (emphasis added). The Sixth Circuit has established that "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 507-08 (6th Cir. 2006) (quoting Loral Defense Sys.–Akron, 200 F.3d at 453).

Here, Ms. Webb's teacher questionnaire found that L.D.H. has problems with acquiring and using information, problems with attending and completing tasks, problems with interacting and relating with others, and problems with caring for herself.[8] (R.

---

[7]Bryson appears to raise this same argument for Dr. McSpadden's 2016 testing report. Because the court found that the ALJ did not commit reversible error in how she considered the report in an earlier section, the undersigned need not address the testing report again here.

[8]According to Ms. Webb's teacher questionnaire, L.D.H. does not have any problems moving about and manipulating objects and she does not have any issues with her health and physical wellbeing. (R. at 250.)

at 247-51.) Within each category, Ms. Webb was given a list of
subtopics that she was supposed to assess for whether L.D.H. has
"no problem," "a slight problem," "an obvious problem," "a serious
problem," or "a very serious problem." (R. at 247-51.) Under the
acquiring and using information category, Ms. Webb observed that
L.D.H. has "a very serious problem" for seven of the ten subtopics,
"a serious problem" for two of the subtopics, and "an obvious
problem" for one subtopic. (R. at 247.) Under the attending and
completing tasks category, Ms. Webb observed that L.D.H. has "a
serious problem" for two of the thirteen subtopics, "an obvious
problem" for five subtopics, "a slight problem" for four subtopics,
and "no problem" for two subtopics. (R. at 248.) Under the
interacting with others category, Ms. Webb observed that L.D.H.
has "an obvious problem" for four of the thirteen subtopics, "a
slight problem" for six subtopics, and "no problem" for three
subtopics. (R. at 249.) In this category, Ms. Webb also commented
"[L.D.H.] does not have severe enough problems in this category to
need anything other than modeling the correct behavior." (R. at
249.) Under the caring for himself or herself category, Ms. Webb
observed that L.D.H. has "a very serious problem" in one of the
ten subtopics, "an obvious problem" in six subtopics, "a slight
problem" in one subtopic, and "no problem" in two subtopics. (R.
at 251.) In this category, Ms. Webb also commented "[L.D.H.] is
very responsive to modeling by someone she trusts and likes. She

has responded well to this support from teachers." (R. at 251.) Consequently, although Ms. Webb opined that L.D.H. has a problem in each of the aforementioned categories, she opined that L.D.H.'s problems were significantly worse regarding her ability to acquire and use information than any of the other categories.

This opinion tracks the ALJ's findings regarding the six functional equivalence domains. The ALJ found that L.D.H. has a marked limitation with acquiring and using information and less than marked (but still existing) limitations with attending and completing tasks, and relating with others, with caring for herself, and with her health and mental wellbeing.[9] (R. at 22-27.); see 20 C.F.R. § 416.926a(e)(2)(i) (a marked limitation "interferes seriously with [a claimant's] ability to independently initiate, sustain, or complete activities"). Moreover, the ALJ referenced generally L.D.H.'s school records several times throughout her analysis of the six functional equivalence domains. See Kornecky, 167 F. App'x at 507-08. Therefore, the court finds that the ALJ did not commit reversible error in failing to mention the teacher questionnaire.

## F.   Severity of Impairments

Next, Bryson argues that the ALJ erred by not finding that L.D.H.'s impairments meet or functionally equal any of the listed

---

[9]Like Ms. Webb, the ALJ also found that L.D.H. had no limitation with moving about and manipulating objects. (R. at 25.)

impairments. Specifically, Bryson points to the fact that Dr. Davis's opinion and L.D.H.'s IQ scores suggest that L.D.H. suffers from both Listing 112.05 Intellectual Disorder and Listing 112.11 Neurodevelopmental disorder. The claimant bears the burden of showing her impairments meet or equal a listed impairment. See 20 C.F.R. § 416.920(a)(4)(iii); Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001). "A claimant can demonstrate that she is disabled because her impairments are equivalent to a listed impairment by presenting 'medical findings equal in severity to all the criteria for the one most similar listed impairment.'" Foster, 279 F.3d at 354 (quoting Sullivan v. Zebley, 493 U.S. 521, 531 (1990)). "A claimant must do more than point to evidence on which the ALJ could have based his finding to raise a substantial question as to whether he has satisfied a listing." Smith-Johnson v. Comm'r of Soc. Sec., 579 F. App'x 426, 432 (6th Cir. 2014).

Listing 112.05 for Intellectual can be shown in two ways:

A. Satisfied by 1 and 2 . . . . :

1.   Significantly   subaverage   general   intellectual functioning  evident  in  your  cognitive  inability  to function  at  a  level  required  to  participate  in standardized testing of intellectual functioning; and

2.   Significant   deficits   in   adaptive   functioning currently manifested by your dependence upon others for personal  needs  (for  example,  toileting,  eating, dressing,  or  bathing)  in  excess  of  age-appropriate dependence.

OR

B. Satisfied by 1 and 2 . . . . :

1.  Significantly  subaverage  general  intellectual functioning evidenced by a or b:

a.  A full scale (or comparable) IQ score of 70 or below on  an  individually  administered  standardized  test  of general intelligence; or

b.  A  full  scale  (or  comparable)  IQ  score  of  71-75 accompanied  by  a  verbal  or  performance  IQ  score  (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2.  Significant  deficits  in  adaptive  functioning currently manifested by extreme limitation of one, or marked  limitation  of  two,  of  the  following  areas  of mental functioning:

a. Understand, remember, or apply information . . . ; or

b. Interact with others . . . ; or

c. Concentrate, persist, or maintain pace . . . ; or

d. Adapt or manage oneself . . . .

20 C.F.R. 404, subpt. P, app. 1, § 115.05. The ALJ found that L.D.H. did not meet this listing under Paragraph A because "the claimant does have the ability to take a standardized test and is not dependent upon others for her personal needs" and under Paragraph B because "the claimant does not have a valid IQ test score within the requisite range with two of the appropriate age-group criteria noted in Section 112.05B2." (R. at 16-17.) Regarding Paragraph A, the fact that L.D.H. has been able to take several IQ tests suggests that she is not unable "to function at a level required to participate in standardized testing of intellectual

functioning." 20 C.F.R. 404, subpt. P, app. 1, § 115.05A(1); (R. 424, 592, 678.) As for Paragraph B, it is true that L.D.H.'s IQ scores in the record fall below 70.[10] (R. at 424, 592, 678.) However, the ALJ did not reject L.D.H.'s disability claim under this listing solely because of her IQ score. Rather, the ALJ found that the record did not support a finding of "[s]ignificant deficits in adaptive functioning currently manifested by [L.D.H.'s] dependence upon others for personal needs." Indeed, the record contains evidence that L.D.H.'s ability to take care of her personal needs and safety was not generally limited. (R. at 224.) That the record also contains contradictory evidence is not sufficient for this court to remand this case. See Barker, 40 F.3d at 794.

Listing 112.11 can be shown by establishing:

A. Medical documentation of the requirements of paragraph 1, 2, or 3:

1. One or both of the following:

a. Frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or

b. Hyperactive and impulsive behavior (for example, difficulty remaining seated, talking excessively, difficulty waiting, appearing restless, or behaving as if being "driven by a motor").

2. Significant difficulties learning and using academic skills; or

---

[10]L.D.H.'s medical records show the results from three IQ tests, where she scored a 65 in February 2016, a 64 in January 2018, and a 64 in August 2018. (R. at 424, 592, 678.)

3. Recurrent motor movement or vocalization.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning . . . :

1. Understand, remember, or apply information . . . .

2. Interact with others . . . .

3. Concentrate, persist, or maintain pace . . . .

4. Adapt or manage oneself . . . .

20 C.F.R. 404, subpt. P, app. 1, § 112.11. Referencing her findings in the six Functional Equivalence Domains, the ALJ found that L.D.H. did not meet this listing because "the claimant's functional limitations are not of listing level severity." (R. at 17.) Bryson argues that this finding was erroneous because Dr. Davis's opinion checked all of the boxes to support a finding of disability under Listing 112.11. (R. at 687.) However, this court has already found that the ALJ did not err in giving limited weight to Dr. Davis's opinion. Moreover, though the ALJ did not provide extensive details in her finding on this issue, elsewhere the ALJ walked through L.D.H.'s medical records with Rainbow Pediatrics, Le Bonheur, and Carey Counseling and highlighted several instances where L.D.H.'s medical records contradicted a finding of disabled under Listing 112.11. (R. at 18-21.) For example, in August 2016, L.D.H. was reported as never "fidgety or unable to sit still," in August 2017,

L.D.H. was reported as "having normal behavior, normal social interaction, and normal attention," in November 2017, L.D.H. was reported as "doing well in school and having a good relationship with teachers and staff," and in July 2018, L.D.H. was reported as having "average intelligence/concentration, appropriate mood, and fair insight/judgment with average intellectual functioning." (R. at 19-21, 539, 620, 659, 744.) This is more than a scintilla of evidence to support a finding that L.D.H. did not meet Listing 112.11, and thus the ALJ had substantial evidence to justify her conclusion. See Kirk, 667 F.2d at 535.

## G.   Discovery Request

Finally, Bryson requests that this court allow her to subpoena records from Dr. Dennis Wilson. According to Bryson, Dr. Wilson is a DDS contract physician who examined L.D.H. on at least five occasions leading up to the denial of her prior claim for disability. (ECF No. 14 at 8.) Following the hearing, the ALJ denied Bryson's request to subpoena records from Dr. Wilson because "the consultive examination in question was performed in December 2011 and a report of that examination, including the doctor's clinical observations, is already a part of the file. It is very unlikely that the doctor's written notes will provide any additional probative information." (R. at 12.) Additionally, the ALJ considered that Dr. Wilson's report was made in conjunction with earlier disability applications that were denied and that the

amended disability onset date was more than five years after Dr.
Wilson last saw L.D.H. (R. at 12.) Regardless, the ALJ noted that
"Dr. Wilson's opinion, like all others submitted in connection
with this case, will be weighed according to its consistency with
the evidence." (R. at 12.)

This court is limited to considering "evidence in the record
below . . . when determining whether or not the ALJ's opinion was
supported by substantial evidence." Bass, 499 F.3d at 512-13.
"There is no backdoor route to get new evidence considered for the
first time at the court of appeals level; the only method to have
new evidence considered is to ask for a sentence six remand under
42 U.S.C. § 405(g)." Id. at 513. As such, this court does not have
the authority to open discovery and issue a subpoena for Dr.
Wilson's records. Rather, the court is limited to determining
whether the ALJ abused her discretion in denying Bryson's request
for a subpoena.

SSA regulations establish that "an administrative law judge
or a member of the Appeals Council may, on his or her own initiative
or at the request of a party, issue subpoenas for the appearance
and testimony of witnesses." 20 C.F.R. § 416.1450(d)(1). As such,
the Sixth Circuit has held that claimants do not have an absolute
right to subpoena physicians, "but rather the administrative law
judge has the discretion to issue a subpoena 'where necessary for
the full presentation of a case.'" Luukkonen v. Comm'r of Soc.

Sec., 653 F. App'x 393, 403 (6th Cir. 2016) (quoting Flatford v. Chater, 93 F.3d 1296, 1300-01 (6th Cir. 1996)). Bryson argues that Dr. Wilson's "raw testing and examination figures and notes" were necessary for the record because the ALJ relied on Dr. Wilson's IQ test results when determining that L.D.H. did not suffer from the listed Intellectual Disorder.

The court finds that the ALJ did not abuse her discretion when she denied Bryson's request to subpoena Dr. Wilson's records. As an initial matter, it is not immediately clear that the ALJ relied on Dr. Wilson's IQ test scores to determine that L.D.H. did not meet Listing 112.05. As discussed above, Listing 112.05 requires both a valid IQ score in the requisite range and certain findings that the claimant has significant deficits in adaptive functioning. The ALJ found that Bryson was unable to establish both necessary elements. Regardless, under SSA regulations, a subpoena is only appropriate to uncover "facts [that] could not be proven without issuing a subpoena." 20 C.F.R. § 416.1450(d)(2). Dr. Wilson's entire report was already in the record. (R. at 406-13.) The report contains a detailed narrative summarizing his appointments with L.D.H. along with the results of L.D.H.'s Wechsler Intelligence Scale for Children-IV test. (R. at 406-13.) Moreover, Dr. Wilson's notes predate Bryson's alleged disability onset date by five years and were made in conjunction with an earlier disability application that was denied. The ALJ did not

abuse her discretion in denying Bryson's request to subpoena Dr. Wilson's "raw testing and examination figures."

### III. CONCLUSIONS

For the reasons above, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

s/ Tu M. Pham_____
TU M. PHAM
Chief United States Magistrate Judge

March 24, 2021_____
Date